Good morning, Your Honors. Ina Lipkin on behalf of the petitioner. This is a case where the court ordered the petitioner to submit a brief explaining why the court would have jurisdiction. The issue here is whether he filed his motion for stay before the Ninth Circuit in a timely manner. The Board of Immigration Appeals initially denied the case on October 7, 2003, and petitioner did not receive notice. Upon receiving what is called a bag-and-baggage order indicating that he should appear for deportation, his attorney called the Board of Appeals, asked whether a decision had been issued. Is there a mic? Sorry, Your Honor. Requested that the BIA check whether, in fact, a decision was mailed when he learned that it was. He promptly filed a motion to reopen and a request to reissue a new decision. A decision was issued on April 28, 2004. However, that decision denied the petitioner's request to reissue the decision. On the ground that it was mailed or that the record reflects that it was mailed to the right address. Yes, that's what the BIA asserted. However, there's nothing Is there anything in the record to indicate mailing? You know, Your Honor, there isn't anything in this administrative record. There's nothing to show that a letter was mailed and then returned as undelivered. And alternatively, there's nothing to show that it was mail-certified return receipt. The BIA decision states that the record reflects that notice was sent to the attorney. Do you have any idea what that refers to? I don't. And that's one of the points that we argued in our brief, that there really isn't anything in the administrative record to buttress that assertion by the board. Furthermore, the petitioner and his attorney of record complied with case law and with the BIA's own precedent. In the matter of In Re Grijalva 21 INN Decision 27 BIA 1995, the board said that although a presumption exists that postal employees would discharge their duties and send the mail, that presumption can be overcome. And the petitioner has done that by himself writing a affidavit under penalty of perjury, and so has his attorney. Furthermore Why does that overcome the presumption? Why does that necessarily overcome the presumption? It shows that the petitioner and his attorney of record have complied with regulation and have done How do we know that kind of truth? Well, the attorney is an officer of the court has taken an oath to uphold the law. You mean lawyers never lie?  Well, but there are no facts. I mean, the fact is your client, the lawyer and the client have filed affidavits. Sometimes affidavits are true, sometimes they're false. I mean, we don't know whether they're true or false. How is that determined? Do we say whenever a client and lawyer file an affidavit, that's conclusive? I mean, how is that resolved? I won't even answer that. I will instead point to the fact that I really wish you would answer it. All right. Well, here the petitioner has always appeared at every individual hearing set by the immigration judge. This is good for the tire of fact. I think these are reasons why the tire of fact that somebody considering the truth of this might believe it. But we don't have a determination. All we have is claims. And how is that resolved? How do we know whether, for that matter, how do we know whether the DIA is right when it says it's mailed? Right. Well, I think in the case of the petitioner, he is always acting in good faith and he has always shown a desire to pursue his asylum application. He himself voluntarily applied. Flaky loses? Well, Your Honors, I don't think that it showed that. I mean, do we make this determination? Do we decide, oh, you know, this guy looks really reliable, so I'm going to leave him? I haven't done that since my last trial, you know. I understand. I think that had the petitioner not actively pursued his appeal, not timely filed it after being verbally told by the immigration judge, that would have shown. What would you like us to do? Maybe that would help answer the question. Would you like us to decide this record, or do you think there's some other option? I think that it's true that this record doesn't have too much evidence to show whether the DIA mailed something to the petitioner's attorney of record or not. I think that it would be wise to remand it to the board and request that the board submit some evidence if they keep such records that they mailed the decision. Or if they have a record. If the DIA could establish that they put it in the mail, is that the end of the inquiry then? Well, Your Honor. Notwithstanding that you say, as there are, there are two affidavits under penalty of perjury, notwithstanding it was put in the mail, or was it received? But, Your Honor, the fact that it was not mailed certified mail is No, I understand that. I'm just trying to understand the construct we've got here. The Congress eliminated certified mail, and as we've noted in SALTA, that changes the regime a bit. So I think, at least what I'm searching for, is what is the construct that you, as on sitting on the recipient's side, believe ought to be the rule if the BIA is going to establish some kind of rule? Is it that it's enough for the BIA to make a record that they, you know, take a video, here's going in the mail, okay? And then if the petitioner doesn't get it and files the office manager of the law firm, the attorney, the petitioner himself, all say, we never got it, is that, they're just out of luck? I think that would place, that would be an unfair result to do that. Certainly the U.S. mail is known for delivering in all weather and all conditions, as we know, from commercials and so forth. But it's also very reasonable to understand that not every piece of mail is going to reach its destination. And I think if an attorney is... I think you've answered Judge Fischer's question, okay? I mean, you're sort of talking, but you're not answering the question. What would you like us to do? What do we do in this situation, okay? Let me give you a list of options, okay? We could simply deny the petition, dismiss, okay? I don't think you'd like that one. We could appoint a master to take evidence and weigh whether your clients are truthful or weigh whether or not, you know, look into the facts. We could remand to the board for a factual determination. We could simply leave it conclusively established that there was no receipt, and therefore order the BIA to reissue its order. Those are the options that immediately come to mind. Now, without the disquisition, okay, is any of those options acceptable to you? Certainly, Your Honor. Okay. Just yes or no will do, okay? Yes, Your Honor. Let's just keep it simple. Okay. Has it taken us through and ordered the BIA to reissue? Yes, Your Honor. How do we know they're not lying? Well, Your Honors, What happens in the next case when there is no lawyer, when there is only a petitioner who is pro se, and he files an affidavit and says, I didn't get it? Happens all the time. We get these things all the time. I never got it under penalty of perjury. Do we accept that as true as well? Well, I can't speak for other cases, but I think if you look at the facts of this case. I'm asking a hypothetical. This is how oral argument works. I understand, Your Honor. I think that you have to look at the facts to see if a petitioner. I just gave you the facts. But you have to look whether a particular petitioner has tried to delay proceedings in the past and what other factors are serving. Some affidavits we believe and some we don't believe, depending on how we evaluate the records. So what you're doing is you're turning us into a trial court, and we make the determination. I mean, do we bring the guy in and see whether he sweats when he testifies? You want us to be a trial court on a cold record, basically on an affidavit. We look at the record, we look at the affidavit and see whether it's believable. Is that what you want us to do? I think part of the determination has to be based on the facts and the record. So you would look at totality of circumstances? Yes, Your Honor. Is that the kind of approach you're suggesting? Yes, Your Honor. Can we do that? Well. I mean, that's what you're asking for. You see the problems with that? What would keep every petitioner who misses a deadline for filing an affidavit? I mean, they're going to get booted out of the country anyway if they lose. Now there are good chances the government will go after them for perjury on this. They hardly ever do even when people put themselves in court. So they file an affidavit saying, I didn't get it. I mean, do you understand the implications of this? I do understand the difficulty of the situation. But I feel that especially in the facts of this case, I think that when someone is pursuing their appeal at every level, timely filing in the past, I think it goes to show that they're doing due diligence to pursue their appeal. I didn't see the government invoke it at all, but there is an 800 number, in fact, that was called. Does the petitioner have any burden to check periodically, given that 800 number, to find out the status? I think there is, you know, a reasonable expectation to do that. That's what the Seventh Circuit said in Nowak. I'm sorry, Your Honor? That's what the Seventh Circuit said in Nowak. Mm-hmm. Are you familiar with Nowak? Yes, Your Honor. The Polish guy? But in this case, the petitioner ---- 94, 5th, 3rd, 390. The Seventh Circuit said you call the number. You have doubts about whether the mails are working. You call the number. Is it, in fact, how ---- I don't know anything about calling the number. Is it hard to get through? Is it ---- No, Your Honor, it's ---- Do you talk to a person? Is it automatic? It's an automatic system, and you punch in numbers to find out the status of your case. But in this instance, the petitioner filed his appeal to the board in 2003, or I think it was at the end of 2002. Let me check exactly. And almost less than a year later, the board made its decision, which is unusual. It usually takes longer. I think the fact that when he received the bag-in-baggage order, he immediately took action to find out why that this happened shows that he did ---- If you look at NOAC, what they say is none of that really matters. I mean, you may agree with the Seventh Circuit, but they say none of it really matters. The thing was issued, the time runs from issuance of the BIA's opinion, and if you have doubts about whether you ---- it's just like district court. We have a federal rule of procedure that says the fact that the clerk doesn't send out an order does not have any effect on the timing. People have a duty to check the docket. It's a harsh rule, but that's the rule in district court, and the Seventh Circuit at least said that's applicable here too. You or your lawyer, certainly a lawyer can call, can have a paralegal every 25 days call and punch in the numbers for all the clients and their docket numbers, right? Certainly, Your Honor, but that's not the rule here. It wouldn't take very long. I mean, it would be an expense of doing business, but it's not that hard to do, right? You could punch in a couple hundred numbers in a matter of a couple of hours, two hours, right? That's true, Your Honor. However, it is the Board of Appeals' duty to timely issue a notice of their decision, and the Petitioner and his attorney have a reliance that that's what the Board will do, that they will timely issue it to them. I'm sure the ---- I think the Seventh Circuit ---- I disagree with that rule. If we say they can rely on it, then they can rely on it. If we say ---- I mean, the Court of Appeals in a particular circuit says they can't rely on it, then they can't rely on it. It's just the way the rule works. Anyway, you've gone over your time. Why don't we hear from the government? Thank you, Your Honor. Actually, we've gone over your time. We never go over. May it please the Court, Joan Smiley from the Department of Justice, on behalf of the Attorney General. Is that important to you, to have to go to the Circuit Court of Appeals to get a decision when you could have just simply reissued the order under the facts of this case? I take it that you agree that the Petitioner never received notice, that everything depends upon the fact that notice presumably was sent to the attorney, correct? Yes. The record indicates that the decision was sent to the attorney. I guess, you know, to follow the Seventh Circuit, the immigration attorneys, the first thing they should do in the morning ---- I'm sorry. You said yes, but you actually answered yes to a different question. Your follow-up was to a different question than you asked. Do you ---- I think Judge Block asked you, do you agree that they got the notice? I'm sorry. Do you agree that they did not get the notice? No, I don't. It was sent to his attorney, presumably, correct? Yes. On page 22 of the record, the cover sheet for the Board's decision indicates that it was sent to the attorney of record at his address of record. All right. So we are clear that it was not sent to the Petitioner. Can we agree to that? Yes. All right. Now, tell me what it is that you rely upon precisely to support the BIA's decision that the record reflects notice was sent to the attorney, the fact that the attorney's name was on the papers? The attorney's name and correct address of record, the P.O. Box in Fremont, California, is indicated on the transmittal letter with the Board decision. In addition, the Board evaluated the evidence that was submitted with the motion to reissue the decision, which consisted of two declarations stating basically that they had not received the decision. When you speak of the transmittal letter, what precisely are you talking about? On page 22 of the record, it's the transmittal letter that is the cover sheet that is included with the Board's decision, which indicates the name and address to which it's directed, and it says enclosed is a copy of the Board's decision of April 28th, 2007. So that's basically what you rely upon as proof that the mailing was sent to the attorney. Yes. That's the entire reliance that you place upon that, correct? I just want to get that clarified. And the only issue in the case is whether the Board's denial to reissue its decision was an abuse of discretion, whereas I've indicated the record indicates that the decision was sent to the correct address. Before you get to that, I mean, what this letter tells us is that the Board had the correct address. Yes. Right? Do we have any evidence as to the person who actually put it in the envelope and put a stamp on it? No, we don't. Whether they typed the envelope correctly? There's a presumption of proper delivery that attaches to postal service mail. Here ---- I'm going to ask you a question, and I would like to answer it. The letter ---- Is there any evidence in the record about the envelope? No, there isn't. Okay. Is there any testimony, anything about anybody that said, oh, yes, I remember this was the Gallup-Singh application. I remember stuffing the envelope, typing up the ---- It's not, Your Honor. Well, how then do we evaluate the Board's finding that it was actually mailed? I mean, we do know people make mistakes. You may have made a mistake once or twice. I have. Yes. I know because the Supreme Court tells me every so often when I've made mistakes. So how do we know that when it got to mailing this particular notice, the clerk that was in charge of it didn't sort of stuff it in the wrong envelope or forget to put a stamp on it or mistype the address? You know, I don't know how the process works. I assume there's some automation, some automated aspect of the process, but how do we know any of those things? There wasn't a glitch in any of those processes? Well, while we don't know the facts that Your Honor is requesting, as this particular case is concerned, we know that it was prepared in the ordinary course of business, placed in the postal mail system, and as I've said there's a presumption of proper delivery once it does enter the mail system. But we've already said in SALTA that that, in the face of some contrary evidence, doesn't suffice. Excuse me, Your Honor. We've already said in SALTA, in this circuit, that under the regular mail provisos, unlike the certified mail provisos, that that presumption doesn't necessarily overcome contrary evidence presented by the petitioner. And here, in fact, there was not just one affidavit but two. In SALTA there wasn't even an affidavit. So what is the regime that the BIA thinks is proper to give notice? Even under SALTA, on page 1079 of that decision, this Court stated that it's still proper to presume that postal officers properly discharge their duties. Yes. And then it goes on to say, deliberately, it says, although it is still proper to presume, it says, delivery by regular mail does not raise the same strong presumption as certified mail, and less should be required to rebut such a presumption. So it does contemplate that it's rebuttable. Now, what is it that a nonrecipient is supposed to put forward to rebut beyond two affidavits from the two people who could logically have received it? First of all, they can't. They're both under penalty of perjury. Excuse me. They're both under penalty of perjury, which wasn't present in SALTA. The facts in this case are very different from the facts in SALTA. And in addition to that. How so? Well, in SALTA, the board and the immigration judge had applied a very strict evidentiary requirement to the burden to establish the lack of notice. Here, the board did not do that. It didn't do anything. It just said no. It did. It evaluated the record before it, the evidence that was submitted by Petitioner with his motion to reissue. Where is that set forth? How do we know? What did it say? It says that the record reflects that, and that is the record that is before the board, the motion that the Petitioner filed. Well, how do we know the board isn't lying when it says that? I mean, usually, when a district judge makes a finding, we don't just take his word for it, much as we may respect him and do respect him. We do in the Second Circuit, though. We usually see if there's evidence to support it. Now, if there's evidence going both ways, we give it to the, you know, the benefit of the doubt to the entire effect. But how do we know that the board here even looked at the record? How do we review this determination by the board that says the record reflects X? I look at the record, as far as I have it, and it reflects nothing of the sort. All it reflects is a piece of paper with an address on it. I have to fill in, you know, the thing about mailing is something I have to imagine in my mind somebody actually doing. And as I'm sort of playing that little movie in my mind, I'm imagining all sorts of ways in which the process could go wrong. I don't know if they type envelopes or whether it's a machine, but, you know, I've seen machines jam. I've seen printers run out of ink. I have seen stamp machines, you know, sort of get skewed, you know, so the stamp doesn't go in the right place or doesn't go in the envelope. I've seen all these things malfunction. And we know for a fact, if you get down to say that there was some case in the news recently about some post-delivery, some mailman who for years took mail home because he kept being overwhelmed by not being able to deliver all the stuff, so they found 10 years' worth of back mail in his house. Maybe even, no, not there, but, you know. So we do know. I mean, we do know. We've all lost pieces of mail, you know, things that have been mailed, that we know have been mailed or that we've mailed and that have never gotten there. It's rare, but it does happen. How do we account for all that? First of all, if an individual that has a removal proceeding that is ensuing has any doubts about the postal system, as in NOAC, they are free to call the BIA inquiry system and check periodically on the status. Did you argue that in your brief? Yes. We did indicate that in our brief. So let me interrupt, if I may. So an immigration lawyer specializing in immigration, the first thing that that person should do in the morning after he or she has a cup of coffee is to call the hotline to find out what's happening with his case. Not necessarily every day. That's what you're suggesting would have to happen. No, as I believe Judge Kaczynski indicated, every 25 days. In other words, that would still give five days after a decision is issued. Here, the evidence shows that. Oh, he could do it 125th of his cases every day. No, no, I'm not joking. I'm saying if he has 200 cases, he could have a paralegal call four cases a day. If someone does not trust that they are going to get notice through the ordinary course of business, that would be an option. Here, the attorney waited 18 days after he says that he found out. He says on February 23rd, 2004, he waited 18 days to file a motion to reissue on March 12th. Would it have made any difference if he had waited 16 days or 12 days or he had done it the next day? Well, this is hard. I mean, would it really have made? I mean, let's level with each other. It wouldn't have made any difference. That the board evaluated. Well, no. Wait, wait, wait. I want to come back to that, because I'm looking at what they say, and they say the respondent has filed a motion to reissue the board's October 7, 2003 decision. The motion is denied as the record reflects that the respondent's decision was correctly mailed to the respondent's attorney of record. I have no knowledge from that statement whether the board looked at the declarations or anything. All it says is the record shows the fact that it was mailed. That's the same record that the BIA was relying upon in SALTA. It was from the BIA, the board standpoint, we sent it out, so that's enough. And is that the board's now official position that so long as it's sent out in regular mail and the internal records at the board and the clerk's office show that it was put in the mail, it does not make any difference what the petitioner, who puts in two sworn affidavits and whatever else they may come up with, doesn't make any difference? Because the board's rule is we put it in the mail for whatever our records say, that's enough for the board, so it doesn't make a hoot difference. No, it would make a difference. I don't think if that's the position that that's consistent with SALTA, as you suggest. It would make a difference. It depends on the facts of the case. Well, how do we know what the board did here? The board indicates that it was sent to the correct address. If it hadn't looked at page 822, then it wouldn't know. If that page said it was sent to 70803. As Judge Kaczynski has posited, it was stamped in the clerk's office, but somewhere between the stamping, which is all that's in the record, it's just a statement that looks like even by a stamped signature, that's all that's in the record that I see. That doesn't show what happened thereafter, whether it fell to the floor or whatever else. So does the board simply say it's enough for our process? The board evaluates the record. Here the statute provides written notice by regular mail, not certified. The law was repealed in 1996. So as long as there's a sheet of paper in the file in the board's offices, that is enough, and if the petitioner doesn't get it, they're out of luck, unless they call the 800 number. That is the government's position. That's the board's rule. The government's position is that the board evaluates the factual record before it. It has, and all it cites in its one-line order, or three-line order, is that it was put in the mail at the board. It doesn't say we don't believe attorneys commit perjury under oath. We believe that attorney affidavits are not worth the paper they're printed on. We don't believe affidavits under penalty of perjury because they don't have anything at stake. We don't believe them because there's no objective evidence or special circumstances, anything to suggest that this one may have slipped through the mail. That's the board's rule. I'm not trying to be argumentative. I'm trying to understand here because we get, as Judge Kaczynski said, we get tons of these, and I'm sure that the board does too, where there may be a claim of non-receipt. So the board rule seems now to be it's enough if we put a piece of paper in somebody at the clerk's office puts a piece of paper in the file and that's it because there's nothing on this record that one can extrapolate anything other than that. There's nothing here except some presumption that the board looks at the record, but there's nothing that's been articulated by the board that backs up what you said. Well, the board says that the record reflects this. They didn't discuss each and every factor. The record also reflects that the petitioner filed two sworn affidavits. So did they look at that or not? I'm sorry. Yes. How do you know that? Because they say that the record reflects this. Well, but see, that's the problem. The record doesn't reflect this, at least not the record we have. The record has nothing about the process of mailing. So they say it. If we take you at your word, then this would be a factual finding about what the record reflects that's not supported by the record because there's nothing in the record. There's no affidavit from some employee of the INS that says, oh, yes, I remember mailing this. There's no notation in the docket sheet saying this was mailed to this address. There's nothing in the record other than a piece of paper with an address on it. So why isn't this a finding? It's the proof of mailing. The transmittal letter. Sorry? The transmittal letter is the proof of mailing in this case. Nothing more is required under the statute. Where? 1229A1 or under the regulation. I'm sorry. Where is it? I mean, what I see at ER 22 or the record 22 is a piece of paper with an address on it. All that is required under the statute and the regulation is service by regular mail. How do we know it was served? How do we know it was actually put in the mail? The presumption is that it was prepared in the ordinary course of business, placed in the place of service. Where does this presumption come from? From the longstanding body of case law. Give me a case. It's noted in our brief. And even under SALTA. I'm sorry. Why don't you get your brief and give me a case? Even under SALTA. Just give me a case. SALTA. Just give me a case. SALTA. No, SALTA is not a case. It helps you. I believe that SALTA does confirm that there is a presumption of delivery, and that in this case, as I've indicated, the person. When you say that there's a presumption of delivery, are you not also saying that there could be circumstances where that presumption could be overcome? It seems to me that what you're saying is that the presumption never can be overcome. Or if you think it can, you tell me under what set of circumstances that presumption can be overcome. Well, for instance, in SALTA, the presumption was overcome because there was evidence that the board and the immigration judge required too heavy of an evidentiary burden. You know, you are misreading SALTA. What SALTA says, assuming you mailed it, there's a presumption of delivery. I'm dealing with a different part of the process. I'm dealing with a question, was it mailed? Yes, if it was mailed, if you have proof of mailing, then you've got some sort of presumption of delivery. But you want to say we want to presume from a piece of paper, from the fact that there's a piece of paper in the record with the right address, that we, the BIA, actually performed all the functions that involved the mailing, taking this piece of paper, put it in an envelope, addressed it properly, stamped it properly, put it in the U.S. mailbox. And the question is, where is the evidence that that happened, or where is the legal presumption that that happened in this case? In this case, the board evaluated what was before it, reached that conclusion. The prior statute. How do we review that? The prior statute. How do we review that? Oh, it's an abuse of discretion standard of review. Unless the board's action was arbitrary, irrational, or contrary to law. No, I think not. It's a question of fact. No, this is on a motion to reissue, which has been construed as a motion to reopen, which would be clearly a highly definite. Why don't you let us decide the standard? Let's say we treat this as a question of fact. Where is the evidence? Where is the evidence? Yes. The evidence would be the motion to reissue, the evidence submitted with it, and the board's decision. There's nothing to tell us about what happened inside the board, whether they actually did the mailing. You know why it matters? Because our law is different from that of the Seventh Circuit. You're familiar with our case in Martina Serrano? Yes. That was a case that we said if it's mailed to the wrong address. Right. And what we held there is that interpreting the Supreme Court's opinion in, I think, Stone v. Sinai, an opinion isn't issued until it is properly mailed. That is correct. And so when it is not properly mailed, there is no issuance and, therefore, no trigger date for the filing of a petition for review. And unlike Martina Serrano, there the decision was not mailed to the address that had been submitted to it by the attorney nine months prior. So they re-realized the mistake and re-sent the decision. I do understand the debate. Here the board found that it was sent to the correct address. But what happens, what Martina Serrano stands for is that the mailing is what triggers what is the issuance date. And it seems to me that you have to have some proof as to the mailing, if that's the case. Otherwise, you don't have an issuance date. The proof by certified mail return receipt requested was eliminated in 1996. Therefore, everything that occurred in this case was eliminated. Well, the INS doesn't have to. I mean, the statute says they may. They need not use certified mail. It doesn't say they are prohibited from doing it. No, but the requirement was repealed in 1996. Here the board clearly complied with the statute on this. The question is then who takes the risk of a glitch? Excuse me? When you choose to make that switch, who takes the risk of a glitch? That's the problem. That's the question. Here Congress enacted a new statute. The board is following congressional intent, complying with the statute, promulgating regulations.  The statute says it may not use certified mail? No. The statute says that you can send it out to the attorney of record by regular mail. Right. But it would not violate the statute to use certified mail. It doesn't preclude certified, but it doesn't require it. No, but the ---- It just requires service by mail. It may simply be consequences from not using certified mail, and, you know, it's up to the BIA whether it wishes to take those the chance of those consequences. What would be wrong with the BIA issuing a regulation or a rule or a guidance to say that our rules are that we are now using regular mail. We will rely on our own internal records, which in this case, before us, the Ninth Circuit panel right now, appears to be simply a certification or a statement, a letter, which shows the correct address. It doesn't show the envelope. It doesn't show any declaration from the author of that letter that he actually caused it to be put in the mail, or there's nothing else, no evidentiary track to take it from the statement on that piece of paper, as would have occurred under a certified mail regime. So now, without that regime in place, the Board is now content to say the risk of non-delivery is entirely on the recipient, and so long as the Board records show it was supposedly addressed to the correct address. All risk is on the petitioner. So, therefore, if you have any concerns about non-receipt, you have this 800 number to call. You should call it every 14 days or whatever, so that you may be aware in case of non-delivery. And then people are on notice that that burden is entirely on them, so they don't wait, as counsel in this case suggested, which occurs to us as well, is that the backlog of getting decisions out, one can't infer from silence for who acted, and I've neglected, I just haven't gotten it, so there's some backlog on the part of the BIA. So why doesn't the Board simply come up with that? I had a case where the Board has, encourages the petitioners to file their briefs using FedEx or DHL and the like, and tells them specifically, so that they have a record as the sender of when they deposited with the delivery service. Now, the Board used to have that obligation on its side of the obligation to get notices out when it used certified mail. That's all gone, because you say Congress, as it did, gave that permission. So why is the Board sort of playing this routine with people? Well, I understand it has some concerns about petitioners falsifying statements of non-receipt, but what, I'm just at a loss to understand how the recipient should document that they didn't get it, other than by saying, we didn't get it. It means that they're totally at risk, so shouldn't they know that? Why isn't the government looking at that? The petitioner is at risk just as a party is at risk before this Court, if there's an adverse decision. Yeah, but they know that. They know that. There's a rule out there. There are decisions out there. Where is the Board's statement to the ---- There are all sorts of advisals every step of the way, from the notice to appear forward. But what are they advised to do in this situation? Is there some Board rule or some guidance on this one? Well, the immigration judge, as well as the forms that are given to the alien, indicates what the rules and regulations that apply consist of. What do they say about this? Do they say essentially what I suggested, which is you need to check in if you don't here, because you've got an obligation that your time limit will run if you haven't moved properly. No, they say that a decision will be mailed, and then there are 30 days thereafter to file a petition. So they're relying on them to come in the mail. That's the affirmative representation, and it doesn't show up in the mail. So if they ---- Relying on ---- Why can't they rely on the presumption as well of the post office carries out its form, and therefore until it does come in the mail, it hasn't been sent? See the dilemma? I mean, how does one know? Well, how one knows is the board is ---- has the full record before it in any given case. In this case and all others that come before it, and they evaluate it. If they are required to reissue a decision every time someone claims they didn't receive it, then it would be very easy ---- That's not at all. That wasn't what I was suggesting at all. Okay. In this case, we would submit the ---- I don't think you listened, but that's all right. That the board did not abuse its discretion. I appreciate your time. Thank you. I think you've given us all we have to give. Anything further? The case is argued. The case is submitted.
judges: Kozinski, Fisher, Block